UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARTLEY MULLEN, | Case No. 2:23-cv-00518-CB |
| Plaintiff, | Honorable Cathy Bissoon |
| v. | |
| DSW DEVELOPMENT CORPORATION, | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**INTRODUCTION**

Plaintiff Bartley ("Bart") Mullen is a bilateral, above-knee amputee who is dependent upon a wheelchair for mobility.  Am. Comp. at ¶ 34.  He has been, and remains, a regular consumer of hotel services.  *Id.* at ¶¶ 37, 40.  He knows from personal experience that the beds in "accessible" hotel rooms are frequently too high to permit him to safely transfer to the bed from his standard size wheelchair.  *Id.* at ¶ 38.  Plaintiff has, in fact, been injured when attempting to transfer from his standard size wheelchair to a bed that was too high in an "accessible" hotel room.  *Id*. at ¶ 39.

Based upon his personal experience, Plaintiff now calls hotels that he would like to patronize, in advance of booking a room, to ensure that the beds in their "accessible" rooms are low enough that he can use them safely.  *Id*. at ¶ 40.  Given that most hotels have beds in their "accessible rooms" that are inaccessible to anyone using a standard size wheelchair, it would be extraordinarily burdensome, and not particularly sensible, for him to personally visit prospective

hotels that he would like to patronize when he can get the necessary information from a phone call.[1]

Plaintiff has previously patronized downtown hotels with unsafe beds while attending hearings at the federal courthouse and meetings and depositions at his counsel's office.[2]

In his Amended Complaint, Plaintiff expressly asserts that he would patronize Defendant's hotel *if* it had beds that he could safely transfer to in its "accessible" rooms and that he is deterred from patronizing the hotel until that time. *Id*. at ¶¶ 52, 53.

Plaintiff was employed as a disability rights advocate by the Center for Independent Living in New Castle, Pennsylvania. *Id.* at ¶ 35. He has advocated on behalf of the disabled community professionally, and he has a personal interest in supporting increased accessibility, generally.

---

[1] Defendant attempts to demonize Plaintiff by noting the number of cases that he has filed against individual hotels in the Western District of Pennsylvania. Counsel for Plaintiff notes that they believe that these cases would be much more efficiently prosecuted as class actions and, in fact, that is how they attempted to pursue the cases in the first instance. While those initial class cases were pending, however, the Third Circuit reversed an order granting class certification in another ADA Title III case being handled by Plaintiff's counsel and issued an opinion that complicates the pursuit of class certification in certain categories of cases filed under Title III of the ADA. *See* , *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890 (3d Cir. 2022). As a result, Plaintiff's counsel made a strategic decision to pursue this case and similar cases as individual actions. Regardless of how these cases are postured, the issue raised by Plaintiff is pervasive and is thus a very high priority to both Plaintiff and the disabled community generally. If Plaintiff is deposed, the above explanation will become of record.

[2] Everyday activities like shopping and visiting entertainment venues can present significant logistical challenges for Plaintiff. Plaintiff wants to ameliorate these challenges by being able to stay at a hotel near the shopping and entertainment venues that he frequents. He also wants to patronize Defendant's hotel because it is close to both the federal courthouse and his counsel's office. Defendant's hotel is located at 745 Grant Street, Pittsburgh, 15219, in close proximity to many of downtown Pittsburgh's shopping and entertainment venues. It is also across the street from the federal courthouse. This makes Defendant's property particularly well-suited to meet Plaintiff's hotel needs. *Id.* at ¶¶ 5, 42.

Defendant asserts two arguments in support of its Motion to Dismiss: 1) that Plaintiff lacks Article III standing; and, 2) that Plaintiff "fails to allege the requisite notice under Title III." These arguments fail for straightforward reasons, and Defendant's Motion should thus be denied.

Regarding standing, Defendant devotes substantial argument to the so-called "intent to return" doctrine, which is a shorthand test that some courts have invoked to evaluate Article III standing in Title III Americans with Disabilities Act ("ADA") cases. While the "intent to return" test might be helpful in some instances, it can be misleading and often leads to an analysis that is untethered to binding Article III jurisprudence. Instead, this Court's evaluation should be rooted in the analysis that has been expressly endorsed by the Third Circuit and applied by another Court of Appeals in a case considering standing-related facts that are virtually identical to the facts alleged in this case. Viewed through that prism, Plaintiff's standing in this case is not a close call.

Defendant also argues that Plaintiff failed to "provide the requisite notice under Title III." However, there is no pre-suit "notice requirement" under Title III and such a requirement would be inconsistent with the express purpose of the ADA.

While it is true that different types of disabilities require different types of accommodations, that is irrelevant to whether Plaintiff has stated a claim in this case. In this individual action, he is asserting his own claim under Title III and the fact that Defendant is required to maintain access for individuals with other categories of disabilities is not at issue.

To the extent that Defendant is arguing that it could reasonably accommodate Plaintiff's disability, that is a fact-intensive affirmative defense that cannot be appropriately raised in a motion to dismiss. Plaintiff is not required to plead facts anticipating Defendant's affirmative defenses.

For these reasons, as amplified by the discussion below, Defendant's Motion should be denied.

## I. LEGAL STANDARD

"A Rule 12(b)(6) motion to dismiss for failure to state a claim must be denied where "a complaint [] contain[s] sufficient factual matter, accepted as true, [that] 'state[s] a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). The court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in the "[nonmoving party]'s favor." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 229 (3d Cir. 2020).

"A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States,* 486 F.3d 806, 810 (3d Cir. 2007) (citations omitted). The Third Circuit, in evaluating whether a complaint adequately pleads the elements of standing, applies the same standard of review applicable to a Rule 12(b)(6) motion. "Court[s] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Ballentine,* 486 F.3d at 810 (citing *Warth v. Seldin,*

4

422 U.S. 490, 501 (1975)); see also *Baldwin v. Univ. of Pittsburgh Med. Ctr.,* 636 F.3d 69, 73 (3d Cir. 2011) ("A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim.").

## II.     ARGUMENT

### A.     Plaintiff Has Article III Standing

To establish Article III Standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Mielo v. Steak N' Shake Operations, Inc.*, 897 F.3d 467, 478 (3d Cir. 2018)(internal citation omitted).

As the Third Circuit has further noted:

> The primary element of standing is injury in fact, and it is actually a conglomerate of three components. (internal citation omitted)  To establish an injury in fact, a plaintiff must first `show that he or she suffered an invasion of a legally protected interest.' Second, a plaintiff must show that the injury is both `concrete and particularized.'  Third, a plaintiff must also show that his or her injury is `actual or imminent, not conjectural or hypothetical.'

*Id.* at 478.

In cases like this one where Plaintiff is seeking injunctive relief, "past exposure to illegal conduct does not in itself show a present case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).  Instead, the plaintiff must allege "continuing, present adverse effects" stemming from the defendant's actions. *Id*.

A plaintiff experiences continuing adverse effects where a defendant's failure to comply with the ADA deters her from making use of the defendant's facility. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 953 (9th Cir. 2011)(*en banc*).

In *Mielo*, the Third Circuit analyzed the injury in fact element of standing in an ADA Title III case seeking injunctive relief, stating:

5

> [A]lthough [defendant] makes much of the unsurprising fact that Plaintiffs do not purport to know the exact date of their next visit to [defendant], this argument misses the point. Plaintiffs contend that they are are *currently* (emphasis in original) `deterred from returning to [defendant's] facilities . . . . In this sense, the injury providing Plaintiffs with standing to seek injunctive relief is not merely hypothetical or even imminent – it is *actual*, in that this allegedly unlawful deterrence is something that Plaintiffs are currently suffering. . . .

*Id.* at n. 15.

Thus, Defendant "misses the point" when it states that "[e]ven under the deterrent effect test, Mullen still must establish that he intends to visit the place of alleged discrimination." Defendant's MTD Brief at 9. First, Plaintiff has in fact alleged that he would patronize Defendant's hotel *if* he could safely use the beds in Defendant's "accessible" rooms. Am. Comp. at ¶ 52 (emphasis added).

Further, Defendant's argument that "Mullen must still establish that he intends to visit the place of alleged discrimination" does not accurately reflect Article III jurisprudence. In a case factually analogous to this one, the Ninth Circuit addressed this issue, stating:

> While [defendant] concedes that a plaintiff need not make repeated in-person visits to ADA non-compliant sites inorder to demonstrate that the defendant's non-compliance has deterred her access (internal citation omitted), it contends that a plaintiff cannot satisfy the injury-in-fact requirement unless she has had at least one 'personal encounter' with the alleged barrier. [Defendant] argues that the Named Plaintiffs fail to meet this threshold because they merely telephoned the hotels to inquire about transportation services available to disabled guests.
>
> However, the purported requirement urged by [defendant] of a 'personal encounter' with an access barrier lacks foundation in Article III. Actually visiting a hotel, as opposed to phoning, does not make plaintiff's injury any more concrete: she is deterred from using the accommodation in either event. *Lujan v. Defs. of Wildlife*, 504 U.S 555, 560 (1992). It is the plaintiff's actual knowledge of a barrier, rather than the source of that knowledge, that is determinative (internal citation omitted).

*Civil Rights Education and Enforcement Center v. Hospitality Properties Trust*, 867 F.3d 1093,1099 (9th Cir. 2017).

Plaintiff's knowledge regarding barriers that might impede access for individuals with disabilities distinct from his is irrelevant. He is unambiguously asserting a claim of discrimination under Title III of the ADA only for himself. This is an individual action, not a class action. Even if it was a class action, it is doubtful that Plaintiff would have standing to assert claims on behalf of individuals with disabilities that are distinct from his own.

In short, "the injury providing Plaintiffs with standing to seek injunctive relief is not merely hypothetical or even imminent – it is *actual*, in that this allegedly unlawful deterrence is something that [Plaintiff is] currently suffering. . . ." *Mielo* at n. 15.[3]

### B.    Defendant's Notice/Reasonable Accommodation Argument is, at a Minimum, Premature

Defendant intimates, but never states directly, that Title III of the ADA imposes a pre-suit notice requirement. This intimation mischaracterizes the purpose and text of the ADA.

Defendant also repeatedly notes, correctly, that because there are no specific scoping regulations that define what it must do to make the beds in its accessible rooms compliant with the

---

[3] Plaintiff wants to patronize Defendant's hotel, but he does not want to risk his health and safety in the process. As noted above, he possesses Article III standing to that end. At the same time, Plaintiff was previously employed as a professional disability right advocate, and he remains committed to advancing accessibility generally, particularly on behalf of individuals with mobility disabilities. He is cognizant of the fact that causing Defendant to offer beds that are accessible to him will also be impactful for other disabled hotel consumers who use standard size wheelchairs. Thus, he is seeking injunctive relief that is as broad as possible, and, in that capacity, he is acting not only on his own behalf but as a tester on behalf of himself and other similarly situated individuals. Am. Comp. at ¶ 43. *Civil Rights Education and Enforcement Center v. Hospitality Properties Trust* at 1101-1102; *see also*, *Heinzl v. Cracker Barrel Old Country Stores, Inc.*,2016 WL 2347367, at *1 (W.D. Pa. Jan. 27, 2016)(Mitchell, J.) report and recommendation adopted as modified *sub nom. Heinzl v. Cracker Barrel Old Country Store, Inc.,* 2016 WL1761963 (W.D. Pa. April 29, 2016)(Hornak, J.); *Mortland v. Omni Pittsburgh Corporation*, 2021 WL 101560 at *6 (W.D. Pa. Jan. 12, 2021)(Conti, J.)("This court has determined that testers have standing to pursue ADA Title III claims."); *Mortland v. Castle Hospitality, LLC*, 2022 WL 3586661, at * 3-4 (W.D. Pa. Aug. 22, 2022)(Fischer, J.)("[T]he Third Circuit did not weigh in on ADA tester standing until 2018 in *Mielo v. Steak n' Shake Operations Inc.*, 897 F.3d 467, n. 15 (3d Cir. 2018). Following *Mielo*, the Court finds that Mortland suffered an actual injury.")

ADA, the question of accessibility is thus governed by the ADA's general accessibility mandate. Given this fact, Defendant has substantial flexibility regarding how it makes the beds in its "accessible" rooms accessible.

What Defendant fails to acknowledge is that the flexibility that exists regarding the options that it might pursue to achieve compliance does not somehow impose a pre-suit notice requirement. Instead, that flexibility might potentially support a reasonable accommodation defense by Defendant. That is, the issue of whether a given defendant has provided a reasonable accommodation is an affirmative defense that cannot be properly addressed in a Rule 12 motion. *See, e.g., National Federation of the Blind v. Target Corporation*, 452 F.Supp.2d 946, 956 (N.D. Ca. 2006) in which the court stated:

> Defendant contends that even if plaintiffs demonstrate a nexus between Target.com and Target stores, Target.com falls under the auxiliary aid provision of Title III. The Auxiliary Aid requirement allows a public accommodation to provide the information in any format, so long at it results in effective communication.  Thus, defendant concludes that Target need not modify its website, so long as it provides the information contained therein in some other format, such as by telephone. However, the flexibility to provide a reasonable accommodation is an affirmative defense and not an appropriate basis upon which to dismiss the action.  After plaintiffs state a claim—by alleging that the website is not accessible to the blind— the burden then shifts to the defendants to assert, as an affirmative defense, that they already provided the information on Target.com in another reasonable format (such as over the phone) . . . . Defendant's challenge is premature and the court declines to dismiss the action on this basis.

*See also*, *National Association of the Deaf v. Harvard University*, No. 3:15-CV-30023-MGM, 2016 WL 3561622, at *10 (D. Mass. Feb. 9, 2016), *report and recommendation adopted*, No. CV 15-30023-MGM, 2016 WL 6540446 (D. Mass. Nov. 3, 2016) (same).

Defendant distorts applicable law by intimating that the flexibility that it has to achieve compliance under the general accessibility mandate somehow compels a pre-suit notice requirement.  Instead, that flexibililty potentially supports a reasonable accommodation defense.

8

By filing the Complaint at issue, Plaintiff provided Defendant with the only notice that is required by the ADA.  The Amended Complaint alleges facts that are seen as being axiomatic within the mobility impaired community, and which should be known by any marginally competent manager or administrator charged with oversight of a given public accommodation's ADA compliance.  That is, a standard size wheelchair seat is 18" from the ground. Am. Comp. at ¶ 46.  Further, while mobility impaired wheelchair users in a standard size chair can safely, easily, and independently transfer to horizontal surfaces that are approximately the same height as the wheelchair seat, horizontal surfaces that are significantly higher require a difficult and dangerous transfer.  *Id.* at ¶¶ 48, 49.  Against the backdrop of these allegations, Plaintiff's Amended Complaint requests that Defendant provide accessible beds in its "accessible" rooms – *i.e.* beds that are approximately the same height as his wheelchair seat.

Again, Plaintiff agrees that the ADA gives Defendant substantial flexibility regarding how to achieve compliance in the context at issue.  Further, Plaintiff agrees that this makes sense given the variety of disabled customers who patronize hotels.  How a given hotel addresses these challenges might provide an affirmative defense to claims asserted in a lawsuit under Title III.  What this flexibility does not provide is a requirement that a disabled individual provide notice to a public accommodation as a prerequisite to filing a lawsuit.  By definition, the fact-intensive inquiry that Defendant acknowledges is required in conjunction with the reasonable accommodation defense cannot be properly raised in a Rule 12 Motion.  If the record evidence ultimately supports a colorably meritorious reasonable accommodation defense, it can be properly raised in a summary judgment motion.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that Defendant's Motion to Dismiss be denied.

Dated: August 4, 2023

Respectfully submitted,

*/s/ R. Bruce Carlson*
R. Bruce Carlson
Ian M. Brown
**CARLSON BROWN**
222 Broad St.
PO Box 242
Sewickley, PA 15143
bcarlson@carlsonbrownlaw.com
ibrown@carlsonbrownlaw.com
(724) 730-1753

Nicholas A. Colella
James M. LaMarca
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243
nickc@lcllp.com
james@lcllp.com

*Counsel for Plaintiff*